*E-Filed 10/21/10*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ARIBA, INC.,

        Plaintiff,

   v.

NATIONAL GRID CORP. OF THE PHILIPPINES,

        Defendant.

No. C 09-4495 RS

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REQUESTING FURTHER BRIEFING ON ENTITLEMENT TO REQUESTED RELIEF**

## I. INTRODUCTION

While they agree on little else, both parties characterize this case as a "simple" contract dispute.[1] Plaintiff Ariba seeks to enforce the parties' written agreement and defendant National Grid Corporation of the Philippines ("NGCP") insists the contract is unenforceable either because its President and CEO lacked authority to enter into the written agreement or because it was Ariba—and not NGCP—who failed to perform and thereby materially breached the agreement. Ariba counters that NGCP's defenses are spurious and unsupported by both law and the facts. NGCP has introduced no material facts to undermine the enforceability of the contract or to contradict Ariba's insistence that NGCP breached and Ariba was thereby damaged. On the liability question,

---

[1] The basis of federal jurisdiction is the diversity of the parties' residences and the requisite amount of money involved.

therefore, Ariba's motion must be granted. Ariba has not, however, thus far introduced legal authority to support its request for damages in the amount of the full contract price (plus interest, attorney's fees, and costs), particularly in light of the fact that it never actually performed. In other words, Ariba has not made a showing that the undisputed facts warrant such recovery as a matter of law. To the extent the question of damages might practically be resolved on the papers, rather than at trial, the parties may submit supplemental briefing addressing these issues. The trial and pretrial hearing dates currently on calendar shall be vacated (subject to rescheduling), and the parties shall adhere to the briefing schedule detailed below.

## II. RELEVANT FACTS

The early months of 2009 found Ariba and NGCP in the midst of contract negotiations regarding NGCP's potential purchase of a software license for Ariba software. By February of that year, the parties had settled on a price. At the time, Antonio Coronel acted as a consultant for NGCP. He was apparently involved in procuring new software for that company. Coronel was familiar with Ariba's software and made a presentation to NGCP's management to introduce the product in March of 2009. The parties do not dispute that the presentation was well-received. In May of 2009, NGCP's acting president and CEO, Dr. Walter Brown, signed a contract to purchase the license. That agreement included a purchase price of $792,000. The agreement also provided that, upon receipt of NGCP's payment, Ariba would deliver the product (or, in reality, disburse a password) so that NGCP could begin to use the software. The date settled upon for payment in full and delivery was June 22, 2009. Late payment was further subject to a penalty of 1.5 percent per month or the maximum legal yearly interest rate (10 percent), whichever was greater.

That date came and went without payment. According to Ariba, an internal dispute amongst NGCP shareholders stalled and ultimately blocked the payment. In August of 2009, NGCP informed an Ariba representative via e-mail that Dr. Brown lacked authority to enter into the agreement, as he had failed to obtain approval from NGCP's board of directors. NGCP now also claims it was never clear from the purchase agreement alone what software product it "agreed" to license and argues the agreement cannot, therefore, constitute a binding contract. Assuming a

No. C 09-4495 RS
ORDER

binding contract does exist, NGCP claims that it was actually Ariba—and not NGCP—who materially breached the contract by failing to deliver the software and by failing to allow NGCP to test the software prior to payment. Ariba counters that the contract clearly and expressly provided for delivery upon payment and did not contemplate any trial or testing period. It insists it was at all times prepared to deliver the software.

Ariba now seeks to recover the full purchase price, plus interest for late payment as contemplated in the agreement. This figure amounts to $891,162.73. Ariba also requests an award of costs and attorney's fees.

### III. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party who seeks summary judgment bears the initial responsibility of identifying an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies this initial burden, it shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. "Only disputes over facts that might affect the outcome of the suit under governing law" are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue exists if the non-moving party presents evidence from which a reasonable fact-finder, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Id.* at 248-49. Finally, Rule 56(d)(2) provides that "[a]n interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages." Fed. R. Civ. P. 56(d)(2).

### IV. DISCUSSION

1. <u>Brown's Authority to Contract</u>

Ariba posits that NGCP's claim that its president and CEO lacked authority to contract with Ariba is at odds with California Corporations Code, section 313:

> Subject to the provisions of subdivision (a) of Section 208, any . . . contract, share certificate, initial transaction statement or written statement, conveyance, or other instrument in writing . . . , executed or entered into between any corporation and any other person, when signed by the chairman of the board, the president or any vice president and the secretary, any assistant secretary, the chief financial officer or any assistant treasurer of such corporation, is not invalidated as to the corporation by any lack of authority of the signing officers in the absence of actual knowledge on the part of the other person that the signing officers had no authority to execute the same.

Ariba insists it had no knowledge at the time the contract was signed that Brown lacked signing authority. The only evidence NGCP introduces to demonstrate contrary knowledge appears in an e-mail sent from NGCP's chief financial officer, Banares, to a representative of Ariba in August of 2009. In that e-mail, Banares does assert that the execution of the software license contract required board approval. This exchange occurred months after the parties signed the contract. Especially as this e-mail appears to mark the first occasion on which NGCP mentioned any authority dilemma,[2] NGCP's proffered evidence actually lends support to Ariba's claim that it had every reason to assume Brown had authority to enter into binding contracts on his company's behalf.

2. The Subject of the Agreement

NGCP also argues it was not aware of the specific software contemplated in the purchase agreement and therefore could not have manifested consent to enter a binding contract. The plain language of the purchase agreement contradicts NGCP's assertion. It explicitly identifies the licensed software. The undisputed evidence also indicates that NGCP's consultant, Coronel, was familiar with Ariba's software and presented the software to NGCP management before Brown signed the purchase agreement. Aside from NGCP's mere assertion, then, there is no evidence to support its claim.

---

[2] In his deposition testimony, Banares responded to the question, "Did you ever inform Ariba in writing, before this August 24th e-mail, that NGCP did not consider itself bound by the contract Dr. Brown had signed in May of 2009?" as follows: "I never made any such communication to that effect, whether in writing or verbally." (Banares Dep. at 64:8-19.)

NO. C 09-4495 RS
ORDER

4

### 3. Ariba's Delivery Obligation

Next, NGCP contends that it was not obligated to pay the purchase price because Ariba neither delivered the software nor afforded NGCP an opportunity to "inspect" or test it. Ariba argues the agreement plainly establishes that it was obligated to do neither. The purchase agreement states that "[t]he shipping of the Ariba Products licensed as set forth above shall be done via CD Shipment solely in the event of the receipt by Ariba of the Total License Fee due and payable by Customer on the Order Form effective date . . . ."

There is also no mention of a trial or testing period of the licensed software in the agreement. NGCP relies on two sections of the California Commercial Code to support its argument that it was entitled to inspect the software. The first is section 2513(1), which states that "[u]nless otherwise agreed and subject to subdivision (3), where goods are tendered or delivered or identified to the contract for sale, the buyer has a right before payment or acceptance to inspect them at any reasonable place and time and in any reasonable manner." Ariba insists that the parties contracted around this provision by expressly agreeing that delivery would occur only after payment. *See also* Cal. Com. Code § 1302(a) ("Except as otherwise provided in subdivision (b) or elsewhere in this code, the effect of provisions of this code may be varied by agreement."). Moreover, the parties do not dispute that NGCP never actually asked to test the software.

NGCP also cites to section 2606 of the California Commercial Code. In relevant part, the section provides that "acceptance of goods" can occur, "[a]fter a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity." Cal. Com. Code § 2606(1)(a). The provision does not advance NGCP's position. It defines what constitutes acceptance of goods. The section contemplates a scenario where a buyer has actually *delivered* goods to a seller, and provides that a buyer may legally assume the seller, in turn, has "accepted" the goods. Here, Ariba never delivered the software, as delivery was to take place following payment.

### 4. Available Remedy

As to damages, Ariba has shown—and NGCP has not introduced any facts to contradict—that it did not receive the benefit of its bargain. As to the *amount* of damages at issue, Ariba in its Complaint requested compensatory damages equal to the full value of the agreement—$792,000—as well as pre- and post-judgment interest for late payment (according to a formula established in the Agreement), and any other relief deemed just by this Court. In its motion for summary judgment, Ariba clarified that this amount totals $891,162.73 (at least where interest was calculated up to September 23, 2010), plus attorney's fees and costs. What it has not actually done, however, is supply legal authority for the proposition that it may recover the full value of the contract. In response to questioning from this Court at the hearing, Ariba appeared to acknowledge that the recovery it sought was actually akin to specific performance (that is, assuming NGCP tendered full payment, Ariba averred that it would then provide NGCP access to the software). A party seeking specific performance ordinarily so indicates in its pleadings and, for that matter, must make a showing that it is entitled to such relief. Ariba has not done so here and, to the extent it seeks an award of damages at the summary judgment phase, its motion must be denied without prejudice.

As explained above, Ariba may file a supplemental brief, not to exceed fifteen (15) pages of text that outlines with precision the legal theory on which it relies in support of the recovery it requests. As the party moving for summary judgment, it is also Ariba's burden to show that the undisputed facts warrant such recovery in this case. It should do so on or before December 2, 2010. NGCP shall file a brief in opposition, subject to the same page limitation, on or before December 16, 2010. As indicated above, all trial and pretrial hearing dates shall be taken off calendar, subject to rescheduling.

## V.  CONCLUSION

NGCP has failed to introduce any issues of material fact to defend against Ariba's breach of contract claim. The undisputed facts suggest Brown appeared to act with signing authority when he entered into the purchase agreement with Ariba in May of 2009. When NGCP failed to make full payment, it breached that contract. Accordingly, Ariba's motion for summary judgment must be

granted, in part, on the question of liability. The parties are requested to provide supplemental briefing on the legal and factual basis, if any, for the remedy Ariba requests.

IT IS SO ORDERED.

Dated: 10/21/10

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE