**United States District Court**
For the Northern District of California

**\*E-Filed 12/30/2010\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ARIBA, INC.,                                     No. C 09-4495 RS

                 Plaintiff,            **ORDER AWARDING DAMAGES**

        v.

NATIONAL GRID CORPORATION OF
THE PHILIPPINES,

                 Defendant.
_____/

## I.   INTRODUCTION

On October 21, 2010, this Court granted plaintiff Ariba's motion for summary judgment on contract liability against defendant National Grid Corporation of the Philippines ("NGCP"). Finding that Ariba had not supplied any legal basis for the damages requested, the Court directed and the parties provided supplemental briefing on the question of damages. For the reasons stated below, Ariba is entitled to $570,403 in damages from NGCP. As provided for in the parties' contract, Ariba is also entitled to reasonable attorney fees and costs.

## II.   RELEVANT FACTS

This case is a straightforward contract dispute. The facts were detailed in the Prior Order and need only be summarized here. What matters is that in May of 2009, NGCP's acting president

and CEO, Dr. Walter Brown, signed a contract to purchase a software license from Ariba. That agreement contemplated a purchase price of $792,000. Part of the total cost represented the licensing fee; the other portion represented a three-year service plan. The agreement also provided that, upon receipt of NGCP's payment, Ariba would deliver the product (or, in reality, disburse a password) so that NGCP could begin to use the software. The date settled upon for payment in full and delivery was June 22, 2009. Late payment was further subject to interest assessed at a rate of 1.5 percent per month or ten percent per annum, whichever was greater. That date came and went without payment. Accordingly, NGCP never paid any amount of the purchase price and Ariba never delivered the software.

In the Prior Order, this Court found as a matter of law that NGCP breached its contractual obligation. The question that remains is whether there is a disputed issue of material fact as to the appropriate measure of damages. Ariba argues here that it is entitled to the full value of the contract, plus interest calculated at a rate of 10 percent per annum for a period of one year and 191 days (or roughly 1.523 years): $912,643.75. In the alternative, it argues it should at least recover the value of its expected profit, or the portion of the contract price that excludes the servicing fee. With interest, Ariba calculates that this alternative amount totals $730,115.51. NGCP disagrees that Ariba is entitled to the full value of the contract price, as Ariba never performed its obligation under the contract and has not advanced a theory entitling it to specific performance. While NGCP does agree that Ariba, as the injured party, may recover its expected benefit, and while it agrees that the licensing fee represents this benefit, NGCP argues that the licensing fee is actually lower than Ariba represents. NGCP insists this number is only $495,000. With interest assessed at the rate and for the period of time Ariba suggests, this figure climbs to $570,403.

### III.  LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party who seeks

**United States District Court**
For the Northern District of California

1  summary judgment bears the initial responsibility of identifying an absence of a genuine issue of

2  material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies this

3  initial burden, it shifts to the non-moving party to present specific facts showing that there is a

4  genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. "Only disputes over facts

5  that might affect the outcome of the suit under governing law" are material. *Anderson v. Liberty*

6  *Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue exists if the non-moving party presents

7  evidence from which a reasonable fact-finder, viewing the evidence in the light most favorable to

8  that party, could resolve the material issue in his or her favor. *Id.* at 248-49.

9                                            IV. DISCUSSION

10        1.   California Civil Code Section 3302

11        Ariba argues it is entitled to recover the full value of its contract with NGCP and, for

12  support, points to California Civil Code section 3302. That section provides that, "[t]he detriment

13  caused by the breach of an obligation to pay money only, is deemed to be the amount due by the

14  terms of the obligation, with interest thereon." To bring it within the section, Ariba characterizes

15  NGCP's obligation as one "to pay money only." Ariba then points to a 1998 district court case

16  interpreting that section in the context of a software licensing dispute. *See RSA Data Security, Inc.*

17  *v. I-Link, Ltd.*, No. 97-4738, 1998 WL 827415 (N.D. Cal. Nov. 25, 1998). Although Ariba asks this

18  Court to apply the reasoning employed there to *this* software licensing contract, NGCP highlights a

19  key factual difference that makes section 3302 applicable in *RSA Data*, but unworkable here.

20        In the *RSA Data* case, the plaintiff agreed to license its encryption software to defendant I-

21  Link. The parties' agreement provided that upon delivery of the software, I-Link was to provide

22  payment in two forms: "object code license fees" and "prepayment license fees." The latter

23  apparently was due in installments, regardless of whether or not I-Link was able to incorporate the

24  software into a product distributed to third parties for profit (the former fees kicked in if this

25  scenario materialized). I-Link never paid any of the "prepayment" installments. It argued that

26  because it was never able to distribute a final product to third parties, it had no obligation to make

27  the "prepayments." The court disagreed and granted RSA Data's summary judgment motion.

28
                                                                          No. C 09-4495 RS
                                                                          ORDER

                                                  3

**United States District Court**
For the Northern District of California

1   Relying on section 3302, the court held that a breach of an obligation to pay money entitled the

2   party to whom performance was due recovery of the "amount due [under] the terms of the

3   obligation, with interest thereon."  Civ. Code § 3302.

4         As NGCP accurately points out, of course, NGCP's obligation under the instant contract was

5   not quite the same.  Although it was obligated to pay money, Ariba was in turn required to deliver

6   the software.  Unlike the plaintiff in *RSA Data*, who had already delivered its encryption software to

7   I-Link, Ariba never released its software to NGCP.  The instant contract did not really involve a

8   pure obligation to pay money; accordingly, NGCP insists section 3302 is not quite the right lens

9   through which the Court ought to look when fashioning a recovery.  Because the purchase price

10  assumed delivery and particularly because that price compensated Ariba for services it never

11  performed, NGCP argues awarding the *full* purchase price would unfairly overcompensate Ariba.

12  NGCP's point is well-taken.

13        2.   California Civil Code Section 3300

14        NGCP argues that the Court should look instead to California Civil Code section 3300 (and

15  Ariba concedes that, should the Court disagree with its section 3302 analysis, it should turn instead

16  to section 3300).  Section 3300 provides that, "[f]or the breach of an obligation arising from

17  contract, the measure of damages, except where otherwise expressly provided by this code, is the

18  amount which will compensate the party aggrieved for all the detriment proximately caused thereby,

19  or which, in the ordinary course of things, would be likely to result therefrom."  Both parties appear

20  to agree that this number represents Ariba's expected profit, as this would place Ariba in the

21  position it would have held had the contract been performed as planned.  Both also agree that

22  Ariba's expected profit is coextensive with the portion of the purchase price that represents the

23  licensing fee, but excludes the servicing fee.  The parties also agree that Ariba is entitled to interest.

24  In its supplemental brief, Ariba requests interest at a rate of 10 percent per annum for a period of

25  one year and 191 days.  NGCP disputes neither figure.  Ariba and NGCP merely disagree as to how

26  much of the full contract price comprised the licensing fee.

27

28

**United States District Court**
For the Northern District of California

1    Specifically, Ariba insists the licensing fee represents 80 percent of the total purchase price,

2    or $633,600.  NGCP disagrees and contends the licensing fee is actually only $495,000.  While this

3    is a disputed fact, the correct amount is easily gleaned from a perusal of the contract documents.

4    Ariba points to the "express terms of the Ariba Order Form," and NGCP cites to "the Ariba Invoice

5    dated June 22, 2009."  Examination of both documents demonstrates that NGCP has made the

6    correct mathematical calculation.  The document NGCP references is an invoice sent from Ariba to

7    NGCP, dated June 22, 2009, and indicating that upon payment of $792,000, Ariba would distribute

8    the software.  The invoice further breaks the $792,000 figure into two components: a licensing fee

9    of $495,000 and a three-year servicing fee of $297,000.  The purchase agreement Ariba invokes

10   does not make such a breakdown, but does state that the servicing fee per annum would represent 20

11   percent of the licensing costs for the first three years.  In its supplemental motion, Ariba erroneously

12   calculated the licensing fee as 80 percent of the total purchase price, or $633,600.  As NGCP

13   correctly points out, in contrast, twenty percent of the licensing fee ($495,000) is $99,000.

14   Multiplied by three (the number of years of servicing fees contemplated), the servicing costs total

15   $297,000.  Added together, the licensing fee ($495,000) and three years' worth of servicing costs

16   ($297,000) amounts to $792,000, or in other words, the agreed upon total purchase price.

17   Accordingly, Ariba is entitled to recover the $495,000 of profit it would have received from the

18   licensing fee, plus interest calculated at the rate agreed to by contract.  At a rate of 10 percent,

19   assessed over a period of one year and 191 days, this sum mounts to $570,403.  Finally, Ariba

20   moved in its original motion for an award of reasonable attorney's fees and costs.  It is not disputed

21   that the purchase agreement provided for such recovery, and Ariba is entitled to receive it.  Cal. Civ.

22   Code. § 1717.  Accordingly, Ariba may file a petition seeking an award of such fees and costs.

## V.   CONCLUSION

23

24   For the reasons discussed above, NGCP is liable to Ariba in the amount of $495,000 plus

25   interest, to be calculated at a rate of 10 percent for a term of one year and 191 days, as well as

26   reasonable attorney fees and costs incurred in prosecuting this lawsuit.

27   IT IS SO ORDERED.

28
                                                                          No. C 09-4495 RS
                                                                          ORDER

5

Dated: 12/30/2010

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

No. C 09-4495 RS
ORDER